IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATIONERS SUPPLY CO., <br><br> Plaintiff, <br><br> v. <br><br> BRADLEY P. KING, <br><br> Defendant. | **COMPLAINT** |

Plaintiff, United Stationers Supply Co. ("United") by way of Complaint alleges and says as follows:

1. Plaintiff United is a corporation organized and existing under the laws of the State of Illinois, having its principal place of business in Deerfield, Illinois. United is authorized to conduct business in North Carolina and has the power to sue and be sued.

2. Bradley P. King is, upon information and belief, President and CEO of Lonesource, Inc., its largest shareholder and a citizen and resident of Wake County, North Carolina.

**JURSIDICTION AND VENUE**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $3,000,000.00, exclusive of interest and costs.

4. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(2) because Defendant resides in Wake County, North Carolina and made the misrepresentations at issue in

this case to Plaintiff while Defendant was in North Carolina, and a substantial part of the events giving rise to the claims at issue in this case occurred in Wake County, North Carolina.

## FACTUAL ALLEGATIONS

5. On or about August 18, 2008 Defendant Brad King signed a contract with Plaintiff United Stationers for the purchase and sale of office products (the "Contract").

6. The contract executed by Defendant King on behalf of Lonesource provided that United would pay Lonesource over $3,000,000.00 in conversion funds and supply other consideration in exchange for Lonesource extending to United a sixty-month agreement naming United as its "Primary Supplier."

7. The contract provided in pertinent part that:

"'Primary Supplier' means that (i) Lonesource will purchase at least 70% of its total office products purchases from United, and (ii) Lonesource will purchase at least 95% of its total monthly wholesale office products purchases from United. 'Total office products monthly purchases' means Lonesource's aggregate monthly purchases of office products merchandise for resale from all sources (including purchases from manufacturers and purchases from wholesalers). 'Total monthly office products wholesale purchases' means Lonesource's aggregate monthly purchases of office products merchandise for resale from all sources other than manufacturers (such as purchases from wholesalers)."

8. The contract further provides that:

"If Lonesource ceases to use United as its primary suppler for any reason (including an inability of United and Lonesource to agree on an issue covered by this Agreement or any dispute arising from or related to this agreement), then:

- "Within 30 days Lonesource will reimburse United an amount equal to one-sixtieth (1/60th) of the conversion funds amount noted above, multiplied by the number of months remaining in the Agreement; and,

- "Lonesource's and United's obligations under this Agreement will terminate."

9. Lonesource's sole explicit commitment under the Contract was to use United as its "Primary Supplier," as defined by the Contract.

2

10. In each month starting with September 2008 and excluding April of 2010, Lonesource failed to purchase at least 95% of its "total monthly office products wholesale purchases" (i.e., purchases from all sources other than manufacturers, such as purchases from wholesalers) from United. Therefore, Lonesource breached the Primary Supplier requirement of the Contract in each month of the two and a half year relationship other than April of 2010. This fact was discovered by United in the discovery process related to a case captioned as *Lonesource, Inc. v. United Stationers Supply Co*. (EDNC Case No. 5:11-cv-00033-D).

11. When Mr. King executed the Contract on behalf of Lonesource, he did not intend to cause Lonesource to comply with the Primary Supplier obligation.

12. In a letter dated September 10, 2010 sent by Defendant King from Wake County, North Carolina to United in Deerfield, Illinois, and in multiple oral communications sent prior to that time, Defendant King falsely represented to United that Lonesource was complying with the Primary Supplier obligation.

13. Defendant King is President, CEO and the largest single shareholder of Lonesource.

14. By sending these false communications regarding Lonesource's compliance with the Primary Supplier obligation, Defendant King and Lonesource were able to obtain the following consideration from United (United's special damages) to which they were not entitled:

    1) United's continued compliance with the Contract granting Lonesource large discounts on a number of office product items;

    2) Large rebates on office product purchases made through United;

    3) Subsidized or fixed cost freight services;

    4) Marketing assistance in the form of cash payments, the creation and printing of product catalogs to be distributed to Lonesource customers, and consulting assistance from United; and

5) Delay in United's efforts to compel Lonesource to comply with its obligation to return the $3,320,000.00 in conversion funds paid to Lonesource.

15. Defendant King knew the Primary Supplier obligation was extremely important to United, yet he did nothing to monitor Lonesource's compliance. In fact, most individuals with purchasing authority or obligations at Lonesource were not even informed of the Primary Supplier requirement.

16. Under the Contract, United sold a number of office products to Lonesource below cost as loss leaders. This is a common business strategy in the office products industry. By offering certain products at steep discounts, United gives its dealer-customers a chance to use these very products as loss leaders with their own customers and potential customers. These loss leaders are seen as a means to grow the dealer's business and, in turn, enhance the volume and profitability of the dealer's account with United.

17. United expected and intended to make up for the losses incurred in the sale of the loss leader items and the cost of the $3,320,000.00 conversion fee through sale of items to Lonesource at price points above cost.

18. Athens Paper, Costco Wholesale Corporation, Ingram Micro, Tech Data and the TriMega Buying Group Association are office product suppliers used by Lonesource that do not own manufacturing facilities and are not manufacturers. Therefore, purchases from these entities are, by contractual definition, part of "total monthly office products wholesale purchases."

19. By Lonesource's own admission, Lonesource purchased over the contractual limit of 5% of its purchases from other suppliers who were not manufacturers every month during its 2 ½ year relationship with United, save one month.

20. In fact, during its relationship with United, Lonesource purchased over $13 million in office products from non-manufacturer-suppliers other than United.

21. Lonesource caused United to incur a net earnings loss by "cherry-picking" its product purchases from United in violation of the Primary Supplier obligation. Lonesource purchased from United the loss leader items offered by United at lower than market cost. Lonesource purchased items United sold at a profit and Lonesource was contractually obligated to buy from United from other suppliers at cost lower than that offered by United. In fact, Lonesource purchased millions of dollars more in office products from non-manufacturers other than United than Lonesource was permitted to purchase under the Primary Supplier provisions of the Contract. Had Lonesource purchased from United the profitable items it "cherry-picked" away from United in violation of the Contract, United's negative profit margin would have turned positive at least at the operating contribution level.

22. Mr. King intended to cause Lonesource to fail to comply with the Primary Supplier obligation at the time he executed the Contract at issue. Mr. King's actions in failing to monitor or require Lonesource to comply with the Primary Supplier obligation caused Lonesource to violate the Contract.

23. Each of Mr. King's representations and indications that Lonesource was in compliance with the Primary Supplier obligation were false.

24. Each of Mr. King's statements regarding Lonesource's compliance with the Contract effectively concealed the material fact of Lonesource's breach.

25. Each of Mr. King's repeated statements regarding Lonesource's compliance was reasonably calculated to deceive, made with the intent to deceive and did in fact deceive United into believing that Lonesource was complying with the Contract.

5

26. Mr. King's refusal to allow United to audit Lonesource's compliance as requested by United on September 1, 2010 also concealed Lonesource's breach.

27. Mr. King also concealed Lonesource's intent to abruptly stop ordering from United and to switch its main supplier relationship to S.P. Richards without warning on December 20, 2010.

28. Mr. King's concealment of Lonesource's breaches proximately caused damage to United.

## COUNT ONE
### (UNFAIR OR DECEPTIVE ACTS OR PRACTICES INDEPENDENT OF FRAUD)

29. The preceding allegations of the Complaint are realleged and incorporated by reference.

30. Defendant King's statements in his September 1, 2010 letter, and at multiple times orally before then, indicating that Lonesource was in compliance with the Contract, had the capacity and tendency to deceive.

31. The deceptive conduct of Lonesource and Defendant King constituted unfair or deceptive acts and were in or affecting commerce as those terms are used in G.S. 75-1.1.

32. The conduct of Defendant King caused actual damage to Plaintiff United in the form of the special damages alleged above.

## COUNT TWO
### (FRAUD AND UNFAIR OR DECEPTIVE ACTS AND PRACTICES)

33. The preceding allegations of the Complaint are realleged and incorporated by reference.

34. Defendant King's fraudulent conduct in executing the Contract without the intent to cause Lonesource to comply with the contract constituted an act of fraud. Defendant King's false statements regarding contract compliance and fraudulent efforts to conceal material facts, as alleged above, constituted acts of fraud.

35. Defendant King's conduct in executing the Contract and making false statements regarding Contract compliance were calculated to deceive, made with the intent to deceive and in fact deceived United.

36. Defendant King's conduct in making false statements regarding Contract compliance occurred with at least culpable ignorance of the truth.

37. These acts of fraud were in or affecting commerce.

38. Defendant's acts of fraud were deceptive acts or practices in violation of G.S. 75-1.1 as a matter of law.

39. These acts or practices caused actual damages including the special damages alleged above.

WHEREFORE, Plaintiff prays for the following relief:

1. Compensatory damages for Defendant's acts of fraud and fraudulent concealment;

2. Treble actual damages pursuant to G.S. § 75-1.1 and G.S. § 75-16 for Defendant's acts of fraud and fraudulent concealment in that they are unfair or deceptive practices as a matter of law;

3. Treble actual damages resulting from Defendant's conduct which had the capacity or tendency to deceive, independent of and separate from any claim of fraud, in that such conduct constitutes an unfair or deceptive act or practice independent and separate from fraud as a matter of law;

4. Attorney's fees pursuant to G.S. § 75-16.1 and any other applicable statute;

5. For the cost of this action to be taxed to Defendant;

6. For a trial by jury; and

7. For such other and additional relief as the Court deems just and proper.

Respectfully submitted this the 15th day of December, 2011.

SMITH MOORE LEATHERWOOD LLP

*/s/ Mark A. Finkelstein*
Mark A. Finkelstein
N.C. State Bar No. 13187
434 Fayetteville Street
Two Hannover Square, Suite 2800 (27601)
P.O. Box 27525
Raleigh, NC 27611
Telephone: 919-755-8834
Facsimile: 919-838-3125
Email: mark.finkelstein@smithmoorelaw.com

*Attorney for Plaintiff*