UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:11-CV-00728-D

| | |
|---|---|
| UNITED STATIONERS SUPPLY CO., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **ORDER** |
| BRADLEY P. KING, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Pursuant to Rule 45(c)(2)(B)(i) of the Federal Rules of Civil Procedure, Plaintiff United Stationers Supply Co. ("United") moves the Court for an order compelling third party Lonesource, Inc. ("Lonesource") to produce items it withheld from its response to a subpoena served on it by United. (DE-23). Lonesource has responded (DE-31), and accordingly, the matter is ripe for adjudication. Pursuant to 28 U.S.C. § 636(b), this matter has been referred to the undersigned. For the reasons stated herein, the motion to compel is denied without prejudice in part and otherwise denied.

**I.     BACKGROUND**

The instant motion to compel arises from a dispute involving a 2008 contract between United and Lonesource. The contract is the subject of a parallel action currently pending before this Court, Lonesource, Inc. v. United Stationers Supply Co., No. 5:11-cv-00033-D ("*Lonesource* action"). In the instant case, United alleges that Lonesource's president, defendant Bradley P. King ("King"), committed fraud by misrepresenting to United that Lonesource was in compliance with the 2008 contract. Compl. ¶¶ 12, 34, DE-1. United believes, based in part upon discovery it

1

obtained in the *Lonesource* action, that King used information obtained from Lonesource's attorneys to craft his allegedly fraudulent misrepresentations. As such, United seeks to discover the substance of communications between Lonesource, its attorneys, and King. To that end, United served Lonesource with a subpoena demanding production of, *inter alia*, "[a]ll e-mails and other documents sent from or to (including cc's) Brad King between September 2, 2010 and September 10, 2010 concerning [United] including e-mails on which Galen Boerema, Robert Van Arnam, Michael Lord, Aaron Spencer, or any other William Mullins attorney (and/or employee) was involved." Ex. A, DE-23-1. The subpoena also requests similar e-mails sent between February 2, 2010 through March 25, 2010, April 21, 2010 through August 5, 2010 and October 2, 2010 through November 16, 2010.

Lonesource objected to the subpoena and provided a privilege log claiming attorney-client and/or work-product protection of forty-nine documents. United argues that the withheld documents are not shielded by attorney-client privilege or work-product privilege and should be produced. Alternatively, United seeks an order compelling Lonesource to produce for *in camera* inspection those withheld materials responsive to the subpoena.

## II. DISCUSSION

Where, as here, a party subpoenas documents in accordance with Federal Rule 45, the person commanded to produce the documents may serve a written objection to production within fourteen days. Fed. R. Civ. P. 45(c)(2)(B). The serving party may then "move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2)(B)(i). When a person subject to such subpoena withholds information based upon attorney-client privilege or trial preparation protection, the party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things in a manner that, without revealing

2

information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A)(i)-(ii).

Here, Lonesource has chosen to meet its obligations under Fed. R. Civ. P. 45(d)(2) by producing a privilege log, appropriately supported by an affidavit from King. *See* United States v. Gordon, No. 4:07-CV-156-D, 2008 U.S. Dist. LEXIS 31917, at *2-3 (E.D.N.C. April 17, 2008) (noting that, in addition to a privilege log, "[p]referably, a party claiming the privilege demonstrates that the privilege applies through affidavits from knowledgeable persons"). The "'standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.'" Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust 1B, 230 F.R.D. 398, 406 n.14 (D. Md. 2005) (quoting Golden Trade, S.r.L. v. Lee Apparel Co., No. 90 Civ. 6291, 1992 U.S. Dist. LEXIS 17739, at *12-13 (S.D.N.Y. 1992)). "'The focus is on the specific descriptive portion of the log, and not on conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be discharged by mere conclusory or *ipse dixit* assertions.'" *Id.* (quotation marks and citation omitted). In *Gordon, supra*, the district court opined that the proponent of the asserted privilege must clarify

> the identity of the sender, the recipient(s), the privilege or doctrine asserted . . . the person or entity asserting the privilege, the date the document was prepared, [the person preparing] the document, the date the document was sent or received, the mode of transmission, . . . the person or entity for whom the privilege is being claimed . . . , [and] whether the document was copied to anyone else or shown to any third party.

2008 U.S. Dist. LEXIS 31917, at *3.

Reviewing the privilege log submitted by Lonesource in the instant case, the undersigned finds that many of the entries fail to sufficiently describe the communications so as to enable

3

United, let alone this Court, to adequately assess the claims of privilege. *See* Fed. R. Civ. P. 45(d)(2)(A)(i)-(ii); Brainware, Inc. v. Scan-Optics, Ltd., No. 3:11cv755, 2012 U.S. Dist. LEXIS, at *7 (E.D. Va. July 12, 2012) (emphasizing the importance of adequate privilege log descriptions). For instance, Lonesource claims attorney-client privilege and work-product protection for an e-mail sent September 7, 2010 by David Ryan to Brad King, Stacey King, and Alex Sossaman. The e-mail is described as "[e-]mail commenting on earlier email in String from Galen Boerema." Privilege Log, Ex. 4, Bates No. LONE45438-LONE45439, DE-24-5. While Lonesource identifies Galen Boerema as an attorney, *see* Aff. King ¶ 4, Ex. 4, DE-31-5, neither the sender nor the recipients of the e-mail are named as attorneys. Thus it is unclear how this particular communication would be protected as a confidential communication between attorney and client. "'[A] document, which is not privileged in the hands of the client, will not be imbued with the privilege merely because the document is handed over to the attorney.'" Isom v. Bank of Am., N.A., 177 N.C. App. 406, 411, 628 S.E.2d 458, 462 (2006) (quoting Mason C. Day Excavating, Inc., v. Lumbermens Mut. Cas. Co., 143 F.R.D. 601, 607 (M.D.N.C. 1992)) (holding that business e-mails copied to attorneys for informational purposes were not protected by attorney-client privilege). Nor does the description indicate that the "earlier email in String from Galen Boerema" includes legal advice given in anticipation of litigation so as to qualify for work-product protection. *See* Isom, 177 N.C. App. at 413, 628 S.E.2d at 463 ("it goes without saying that any otherwise business emails, copied to an attorney, are not protected by the work product doctrine solely due to the fact they were sent during a time when the business is anticipating litigation"). For similar reasons, it is unclear how an e-mail sent October 4, 2010 by Jane Toth to Brad King, described as "Email string re: forwarding document to [attorney] Howard Satisky" qualifies for work-product or attorney-client protection. Privilege Log, Ex. 4, Bates No.

4

LS0615, DE-24-5.

The undersigned will allow Lonesource ten (10) days following entry of this order to amend the descriptions contained in its privilege log with regard to the following documents identified by their Bates stamp numbers: LONE045424, LONE45428, LONE45431, LONE45438-LONE45439, LONE45440, LONE45441-LONE45443, LONE45444, LS0544-LS0546, LS0547-LS0550, LS0551-LS-0552, LS0553-LS0554, LS0555-LS0561, LS0569-LS0571, LS0572, LS0573, LS0575, LS0577-LS0578, LS0583-LS0586, LS0587-LS0590, LS0615, LS616, LS0617-LS0619, and LS0624-628. The amended descriptions should fully "set[] forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed," Neuberger, 230 F.R.D. at 406 n.14, in a "manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A)(i)-(ii). For ease of reference and to enhance the Court's understanding of the issues, Lonesource should include with its amended privilege log a list identifying all persons (particularly attorneys) named in the amended privilege log, whether as recipients, senders, or subjects of e-mails. Once the amended privilege log is filed with the Court, United shall have five (5) days to file a response indicating its position on whether the amended descriptions are sufficient to invoke the privileges claimed by Lonesource. The undersigned will then review the amended privilege log, along with United's response, to determine whether the above-listed documents are privileged.

The remaining documents identified by Lonesource in its privilege log show confidential communications between attorney and client and will be accorded protection. The attorney-client privilege protects communications if:

> (1) the relation of attorney and client existed at the time the communication

5

was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

State v. Murvin, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981); Isom, 177 N.C. App. at 411, 628 S.E.2d at 462. The Supreme Court of North Carolina has recently emphasized that "'the public's interest in protecting the attorney-client privilege is no trivial consideration . . . . The privilege has its foundation in the common law and can be traced back to the sixteenth century.'" Dickson v. Rucho, __ N.C. __, __ S.E.2d __, 2013 N.C. LEXIS 56, at *15 (Jan. 25, 2013) (quoting In re Miller, 357 N.C. 316, 328, 584 S.E.2d 772, 782 (2003)). "'The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" Id. (quoting Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998) (citations and quotation marks omitted)).

Lonesource's privilege log and the supporting affidavit by King show direct, confidential communications between attorneys and their Lonesource clients regarding legal advice about the relationship and potential litigation between Lonesource and United. For example, an e-mail dated September 3, 2010 sent by attorney Daniel Cahill to Brad King and copied to attorneys Rob Tyler and John W. O'Hale regarding "potential courses of action for Lonesource" clearly qualifies as a privileged attorney-client communication. Privilege Log, Ex. 4, Bates No. LS0532-LS0543, DE-24-5. The affidavit by King supports this conclusion. King avers that upon receiving a September 1, 2010 letter from United alleging breach of contract by Lonesource and demanding an audit, Lonesource reasonably believed that litigation was imminent and contacted its attorneys for legal advice. Aff. King ¶ ¶ 13, 16, DE-31-5; United Sept. 1, 2010 Letter, Ex. 2, DE-31-5.

6

United argues, however, that the communications should not be protected because King did not seek legal advice "for a proper purpose." Instead, asserts United, King sought advice for the purpose of perpetuating fraud against United with regard to the 2008 contract. Specifically, United contends that King consulted with Lonesource attorneys before sending a September 10, 2010 letter asserting that Lonesource was in compliance with the 2008 contract. United argues that King's assertion of compliance was fraudulent, and as such, any legal advice received by King before drafting the letter is discoverable under the crime-fraud exception to attorney-client privilege. United asks the Court to compel the communications or, alternatively, to conduct an *in camera* review.

Under the crime-fraud exception, communications otherwise protected by the attorney-client privilege lose their protection if the lawyer is consulted in furtherance of a continuing or contemplated crime or fraud. See Miller, 357 N.C. at 338, 584 S.E.2d at 788; United States v. Zolin, 491 U.S. 554, 563 (1989). However, the crime-fraud exception is narrow and

> [b]efore engaging in *in camera* review to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person," *Caldwell v. District Court*, 644 P. 2d 26, 33 (Colo. 1982), that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

Zolin, 491 U.S. at 572; *see also* Miller, 357 N.C. at 336, 584 S.E.2d at 788 (trial court may conduct *in camera* review only if "the party seeking the information has, in good faith, come forward with a nonfrivolous assertion that the privilege does not apply"). Review *in camera* should not be conducted as a mere fishing expedition. See Miller, 357 N.C. at 342, 584 S.E.2d at 790-91; Zolin, 491 U.S. at 571 ("There is no reason to permit opponents of the privilege to engage in groundless

7

fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."). This is in part because the routine use of *in camera* inspections places "the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk" and burdens the district courts called upon to review large records. Zolin, 491 U.S. at 571.

Here, United argues that Lonesource's privilege log supplies the necessary evidence of fraud, in that the log reveals that King consulted with Lonesource's attorneys in analyzing the 2008 contract and drafting the September 10, 2010 letter to United. But this evidence falls far short of that necessary to indicate that King consulted with Lonesource attorneys for the purpose or with the intent of committing fraud, particularly in light of the September 1, 2010 letter sent by United accusing Lonesource of breach of contract and demanding an audit. *See* Glaxo, Inc. v. Novopharm Ltd., 148 F.R.D. 535, 541-45 (E.D.N.C. 1993) (denying motion to vitiate attorney-client privilege where movant failed to present sufficient evidence of intent to commit fraud to overcome privilege). Further, whether a breach of the 2008 contract in fact occurred is hotly disputed by the parties in the parallel *Lonesource* action. If no breach of contract occurred, the fraud claim against King is obviated. United's argument regarding its evidence of King's alleged fraud essentially asks the Court to determine that Lonesource was not in compliance with the 2008 contract. This, the undersigned declines to do. Because United has presented insufficient evidence to show that the crime-fraud exception applies to the documents the undersigned has found to be protected by attorney-client privilege, United's motion to compel or, alternatively, for *in camera* review of these documents is denied.

### III. CONCLUSION

In summary, the parties are directed as follows:

1. Lonesource has ten (10) days following entry of this order to amend the descriptions

8

Case 5:11-cv-00728-D   Document 60   Filed 02/01/13   Page 8 of 9

contained in its privilege log with regard to: LONE045424, LONE45428, LONE45431, LONE45438-LONE45439, LONE45440, LONE45441-LONE45443, LONE45444, LS0544-LS0546, LS0547-LS0550, LS0551-LS-0552, LS0553-LS0554, LS0555-LS0561, LS0569-LS0571, LS0572, LS0573, LS0575, LS0577-LS0578, LS0583-LS0586, LS0587-LS0590, LS0615, LS616, LS0617-LS0619, and LS0624-628.

2. Once the amended privilege log is filed with the Court, United shall have five (5) days to file a response indicating its position on whether the amended descriptions are sufficient to invoke the privileges claimed by Lonesource.

Accordingly, United's motion to compel (DE-23) the above-listed documents is DENIED WITHOUT PREJUDICE at this time. United's response to Lonesource's amended privilege log will be considered a revised motion to compel. Should Lonesource fail to timely file an amended privilege log, United's revised motion to compel will be granted as to the above-listed documents.

For the reasons set forth herein, United's motion to compel the remaining documents contained in Lonesource's privilege log, not listed above, is DENIED.

DONE AND ORDERED in Chambers at Raleigh, North Carolina on Friday, February 1, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE